IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RALPH VARRATO, | : | |
|     Plaintiff | : | Civil Action No. 1:11-CV-398 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| UNILIFE CORPORATION, et al., | : | |
|     Defendants | : | |

## MEMORANDUM

Plaintiff Ralph Varrato initiated this action against Defendants by filing a complaint in the Court of Common Pleas of York County, Pennsylvania on February 3, 2011. The complaint raises a claim for breach of contract against Defendant Unilife and claims of defamation against all Defendants. On March 1, 2011, Defendants filed notice of removal pursuant to 28 U.S.C. § 1441 and § 1446. On March 8, 2011, Defendants Ann Otzenberger, Alan Shortall, and Eugene Shortall filed motions to dismiss the defamation claims raised against them. The matter having been fully briefed, the Court will now grant Defendants' motion in part and deny the motion in part.

**I.    BACKGROUND**[1]

According to Plaintiff's complaint, Plaintiff is a former employee of Defendant Unilife.

---

[1] In reviewing the motion to dismiss, the Court will accept Plaintiff's factual allegations as true and will "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir.2004); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). The Court notes that Plaintiff only attached a redacted version of the agreement at issue to his complaint. (Doc. No. 1-3, Ex. A.) However, consistent with the Third Circuit's guidance in Lum v. Bank of America, the Court will consider the unabridged agreement in resolving this motion to dismiss. Lum, 361 F.3d at 221 n.3 (in resolving a motion to dismiss the court may consider an agreement not attached to the complaint where the document is integral to or explicitly relied on in the complaint).

(Doc. No. 1-3 ¶ 12.) In July 2010, the parties agreed to end this relationship and entered into a "Confidential Agreement and General Release" on July 15, 2010. (Id. ¶¶ 13-14.) The express purpose of the agreement is to "avoid litigation and resolve any and all claims or differences arising out of Varrato's employment." (Doc. No. 7-1 ¶ 2.) Pursuant to the agreement, Defendant Unilife waived its right to collect $56,093.31 from Plaintiff. (Id. ¶ 3.) In consideration of this waiver, Plaintiff agreed to:

> [F]orever release and discharge Unilife and its parents, subsidiaries, affiliates, officers, directors, agents, contractors, consultants and employees, past and present, collectively or individually, from any and all claims, demands, causes of actions, losses and expenses of every nature whatsoever, known or unknown, arising up to and including the date on which [Plaintiff] executes this Agreement, including but not limited to any claims arising out of or in connection with his employment or separation from employment with Unilife.

(Id. ¶ 8(a).) The agreement further specified that the release covered, inter alia, claims of libel and slander. (Id. ¶ 8(a)(I).) In addition, the parties agreed to "not make statements to any third parties about each other and/or their affilitates, products, owners, employees, or representatives that are in any way disparaging or negative." (Id. ¶ 9(a).)

After the agreement was executed and Plaintiff began a new job, he became aware of statements he alleges constitute violations of the agreement, namely:

> July 9, 2010, Alan Shortall, the CEO of Unilife advised the entire facilities department that:
> 1. Varrato "is a rat and incompetent" and because of that "he was taken off the construction building."
> 2. That Varrato was connected to organized crime by stating "Varrato can bring his Gambinos."
> 3. He told Varrato "he was a rat to his face so I have no problem telling you this."
> 4. Varrato "cost the company millions."
> July 15, 2010, Eugene Shortall, a V.P. of Unilife advised Jim Weir

> that Unilife paid Varrato "$50,000 to walk away and not sue the company."
>
> [ . . . ]
>
> After August of 2010, Alan Shortall, the CEO of Unilife, Bernhard Opitz, the Senior VP Operations of Unilife, Jim Weir, the Facility Manager of Unilife and Ann Otzenberger, the Quality Manager of Unilife all advised Unilife employees, vendors and/or suppliers that Varrato was fired from his new job because he tried to use United Partitions at the new company.

(Doc. No. 1-3 ¶ 19.)[2] In addition, Plaintiff alleges that "Unilife employees even shared disparaging comments about Varrato with their family members. Specifically, Varrato's daughter, Angela Varrato received a text message from the girlfriend of Aaron Weir, the son of Jim Weir son [sic] girlfriend, in Oct of 2010 stating 'Have fun with daddy not keeping a job.'" (Id. ¶¶ 24-25.)

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In reviewing a motion to dismiss, a court may "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum, 361 F.3d at 221 n.3. The motion will only be properly granted when, taking all factual allegations and inferences drawn therefrom as true, the moving party is entitled to judgment as a matter of law. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990). The burden is on the moving party to show that no claim has been stated. Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980). Thus,

---

[2] In addition to these allegations, Plaintiff makes a number of allegations regarding statements made by Defendant Jim Weir. Because Defendant Weir does not move to dismiss the claims against him these claims are not pertinent to the present motion.

3

the moving party must show that Plaintiff has failed to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist." Kost, 1 F.3d at 183 (citations omitted). A court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906, 908 (3d Cir. 1997). Indeed, the Supreme Court has recently held that while the 12(b)(6) standard does not require "detailed factual allegations," there must be a "'showing,' rather than a blanket assertion of entitlement to relief. . . . '[F]actual allegations must be enough to raise a right to relief above the speculative level.'" Phillips v. County of Allegheny, 515 F.3d 224, 231-32 (3d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Put otherwise, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1955 (2009)).

## III. DISCUSSION

Defendants Alan Shortall, Eugene Shortall, and Ann Otzenberger move to dismiss the defamation claims raised against them in Count II of Plaintiff's complaint. (Doc. No. 3.) At issue are two sets of statements. The first are statements made by Defendants Alan Shortall and Eugene Shortall on July 9, 2010, and July 15, 2010, respectively. Defendants argue the claims arising from these statements must be dismissed because the claims are barred by the release signed by Plaintiff on July 15, 2010. The second concern statements alleged to have been made by Defendants Otzenberger and Alan Shortall "[a]fter August of 2010." Defendants move to dismiss the claims arising from these statements on the grounds that the alleged statements are incapable of defamatory meaning and Plaintiff failed to plead the identity of the recipients of the

alleged statements.

### A.     Statements Made On or Before July 15, 2010

Plaintiff's complaint alleges that Defendant Alan Shortall told the Unilife facilities department on July 9, 2010, that:

> 1. Varrato "is a rat and incompetent" and because of that "he was taken off the construction building."
> 2. That Varrato was connected to organized crime by stating "Varrato can bring his Gambinos."
> 3. He told Varrato "he was a rat to his face so I have no problem telling you this."
> 4. Varrato "cost the company millions."

(Doc. No. 1-3 ¶ 19.)  In addition, the complaint alleges that Defendant Eugene Shortall "advised Jim Weir that Unilife paid [Plaintiff] '$50,000 to walk away and not sue the company.'" (Id.) Defendants claims that these statements are covered by the release from liability contained in the parties' "Confidential Agreement and General Release," and must be dismissed.

"Under Pennsylvania law, a release is a contract . . . and governed by the rules of contract construction." G.R. Sponaugle & Sons, Inc. v. Hunt Const. Group, Inc., 366 F. Supp. 2d 236, 242 (M.D.Pa. 2004) (citing Evans v. Marks, 218 A.2d 802 (Pa. 1966); Sparler v. Fireman's Ins. Co., 601, 521 A.2d 433, 434 (Pa. Super. Ct. 1987) (en banc)).  Where the language of the release is "clear and unambiguous," a court reviewing the agreement "looks no further" than the express terms of the release.  Taylor v. Solberg, 778 A.2d 664, 667 (Pa. 2001).  This is true even if the terms of the release are "broad or general, and no matter how 'improvident' the agreement may later prove for one of the parties."  G.R. Sponaugle & Sons, 366 F. Supp. 2d at 242 (citing Taylor, 778 A.2d at 667).  Accordingly, a party's subjective intention regarding a claim may not serve to alter the terms of release.  Buttermore v. Aliquippa Hosp., 561 A.2d 733, 735 (Pa. 1989)

(holding that regardless of one party's contrary intention, the "ordinary meaning" of the release determined the scope of a liability release).

The language in the instant release is clear and unambiguous. Accordingly, Plaintiff's defamation claims arising from statements made by Defendant Alan Shortall on July 9, 2010 – six days before the agreement was executed – are covered by the release, which waives liability for "any and all claims . . . arising up to and including the date on which [Plaintiff] executes this Agreement" including "libel [and] slander." (Doc. No. 7-1 ¶ 8(a).) Plaintiff seeks to evade the express terms of the release by noting that the purpose of the release is "to avoid litigation and resolve any and all claims or differences arising out of [Plaintiff's] employment." (Id. ¶ 2.) Contrary to Plaintiff's assertion that this language calls into question the terms of the release, it in fact bolsters Defendant Alan Shortall's position. Indeed, if the purpose of the Agreement was to avoid litigation arising out of Plaintiff's employment, then the purpose of the Agreement would be furthered by a release barring claims against Plaintiff's employer for statements made during Plaintiff's employment about Plaintiff's job performance. Because Plaintiff's claim for defamation arising from the July 9, 2010 statements is unquestionably covered by the release, the Court will dismiss those claims.[3]

---

[3] Plaintiff, in his brief in opposition, also cites a statement from June 23, 2010, in support of a defamation claim against Defendant Alan Shortall. The allegation states that on "June 23, 2010, Jim Weir, the Facility Manager of Unilife advised Jeff Clevenger that Alan Shortall, the CEO of Unilife, said Unilife was "playing with Ralph because that's how they caught the rat." (Doc. 1-3 ¶ 19.) This allegation also concerns activity that took place prior to the date the contract was executed and cannot support a claim for the same reasons that the July 9, 2010 allegation cannot support a claim. Moreover, even if the claim were not barred by the release, according to the complaint the statement at issue was not made by Defendant Alan Shortall, it was made by Defendant Weir. As such the allegation does not support a cause of action against Defendant Alan Shortall.

Likewise, the statements made by Defendant Eugene Shortall on July 15, 2010, are covered by the release. The release was executed on July 15, 2010. (Doc. No. 1-3 ¶¶ 13-14.) As noted, the release covers claims arising up to and including the date the release was executed. (Doc. No. 7-1 ¶ 8(a).) Accordingly, for the same reasons that the Court grants Defendant Alan Shortall's motion to dismiss these claims, the Court will also grant Defendant Eugene Shortall's motion to dismiss these claims.

**B.     Statements Made "After August of 2010"**

Plaintiff asserts that:

> After August of 2010, Alan Shortall, the CEO of Unilife, Bernhard Opitz, the Senior VP Operations of Unilife, Jim Weir, the Facility Manager of Unilife and Ann Otzenberger, the Quality Manager of Unilife all advised Unilife employees, vendors and/or suppliers that Varrato was fired from his new job because he tried to use United Partitions at the new company.

(Doc. No. 1-3 ¶ 19.)[4] Defendants Otzenberger and Alan Shortall raise two grounds for dismissing the claims arising from these statements: (1) the alleged statements are incapable of defamatory meaning; and (2) Plaintiff failed to plead the identity of the recipients of the alleged statements. The Court will consider these issues <u>seriatim</u>.

*1.     Capacity for Defamatory Meaning*

The "threshold question" in a defamation action is whether the statement at issue is

---

[4] Plaintiff, in his brief in opposition, also cites a statement from July 29, 2010, in support of a defamation claim against Defendant Alan Shortall. The allegation states that on "July 29, 2010, Jim Weir, the Facility Manager of Unilife contacted Jeff Clevenger after learning from Alan Shortall that Shortall was going to call Varrato's "new employer to let them know he was a rat and crook." (Doc. No. 1-3 ¶ 19.) This allegation cannot support a claim against Defendant Alan Shortall. Although there are quotations marks in the allegation, there is no allegation regarding whether anyone actually spoke those words or whether Defendant Alan Shortall was the individual who made the alleged statement.

capable of a defamatory meaning. Agriss v. Roadway Express, Inc., 483 A.2d 456, 461 (Pa. Super. Ct. 1984). This is a question of law for the court to decide. MacElree v. Phil. Newspapers, 674 A.2d 1050, 1053 (Pa. 1996). Only if the court determines the communication at issue is capable of defamatory meaning may the case proceed to a jury.[5] Id. A communication is defamatory if it "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Id. at 1054 (quoting Birl v. Phil. Elec. Co.,167 A.2d 472, 475 (1960)). Put in other terms, "[a] publication is defamatory if it tends to blacken a person's reputation or expose him to public hatred, contempt, or ridicule, or injure him in his business or profession." Green v. Mizner, 692 A.2d 169, 172 (Pa. Super. Ct. 1997). "[P]ersonal annoyance and embarrassment . . . are not the sorts of injury that will support a defamation claim." Parano v. O'Connor, 641 A.2d 607, 609 (Pa. Super. Ct. 1994). Of particular note, the Pennsylvania Superior Court has held that a statement that a plaintiff was terminated from her employment is not capable of defamatory meaning. Livingston v. Murray, 612 A.2d 443, 448 (Pa. Super. Ct. 1992) (citations omitted).

The statements cited by Plaintiff, standing in isolation, appear to be directly controlled by Livingston. However, when considering whether a statement is capable of a defamatory meaning a court must consider the extrinsic circumstances known to the recipient of the defamatory statement. Restatement (Second) of Torts § 563 cmt. e (1977); see also Baker v. Lafayette College, 532 A.2d 399, 402 (Pa. 1987) (the test to be applied is "the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the

---

[5] If a statement is capable of a defamatory meaning, the jury then must determine whether it was so understood by the recipient. Corabi v. Curtis Publ'g Co., 273 A.2d 899, 904 (Pa. 1971).

average persons among whom it is intended to circulate"). Plaintiff's complaint alleges that Jim Weir, a Unilife employee, made a number of statements in which he claims Plaintiff had accepted bribes from United Partitions. (Doc. No. 1-3 ¶ 19.) Accordingly, to the extent that any of the individuals to whom Defendant Weir made his statements were the same as the individuals to whom Defendants Otzenberger and Alan Shortall made their statement that Plaintiff "was fired from his new job because he tried to use United Partitions at the new company," the latter statement could reasonably be construed as claiming that Plaintiff was fired for accepting bribes. As such, the Court cannot say at this juncture that the statement is incapable of a defamatory meaning. Dunlap v. Phil. Newspapers, Inc., 448 A.2d 6, 10 (Pa. Super. Ct. 1982) (holding that where the "meaning conveyed" by an article and photograph was that plaintiff accepted a bribe, it was "beyond question" that the article was capable of a defamatory meaning).

      2.  *Failure to Plead the Identity of the Recipients*

Defendants Otzenberger and Alan Shortall also move to dismiss based on Plaintiff's failure to specifically plead the party to whom these Defendants made the statements. In support of their position Defendants Otzenberger and Alan Shortall rely on three cases for the proposition that under Pennsylvania law "a complaint for defamation must, on its face, specifically identify what allegedly defamatory statements were made by whom and to whom." (Doc. No. 6 at 14 (citing Ersek v. Twp. of Springfield, 822 F. Supp. 218, 223 (E.D. Pa. 1993); Gross v. United Eng'rs and Constructors, Inc., 302 A.2d 370, 371 (Pa. Super. Ct. 1973); Raneri v. Depolo, 441 A.2d 1373, 1375 (Pa. Commw. Ct. 1982)).) However, federal pleading standards govern removal actions; accordingly the cases cited by Defendants are inapposite. Fed. R. Civ. P. 81(c)(1); Willy v. Coastal Corp., 503 U.S. 131, 134-35 (1992) (noting that the Federal Rules

of Civil Procedure govern removal actions); Am. Standard Life & Acci. Ins. Co. v. U.R.L., Inc., 701 F. Supp. 527, 540 (M.D. Pa. 1988) (reliance on Gross "misplaced" in federal court).

The question then is not whether Pennsylvania pleading standards require Plaintiff to specifically plead to whom the statements were made. Rather, the issue is whether the federal pleading standards require such a rule. As previously explained, Twombly and Iqbal do not require Plaintiff to make "detailed factual allegations." Phillips, 515 F.3d at 231-32. Plaintiff must only "set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler, 578 F.3d at 210 (quoting Iqbal, 129 S. Ct. at 1955). Plaintiff has alleged that the statements were published and has identified a group of individuals to whom the statement was published. Further specificity regarding to whom the statements were published is not necessary under the federal rules. See, e.g., Am. Standard Life, 701 F. Supp. at 540 (rejecting defendants' motion to dismiss defamation claim for failure to identify the person to whom the alleged statements were made and holding that under federal pleading standards an allegation that "statements were allegedly made to policyholders of plaintiff" was sufficient); see also Jones v. Johnson & Johnson, Doc. No. 94-7473, 1995 U.S. Dist. LEXIS 13453, at *2-3 (E.D. Pa. Sept. 13, 1995) ("Pennsylvania law requires pleading with heightened specificity in defamation cases," but under the federal rules, more stringent pleading is not required). Therefore, this ground is insufficient to warrant dismissal of the claim.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RALPH VARRATO, | : | |
|     Plaintiff | : | Civil Action No. 1:11-CV-398 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| UNILIFE CORPORATION, et al., | : | |
|     Defendants | : | |

## **ORDER**

**NOW**, on this 20th day of April 2011, **IT IS HEREBY ORDERED THAT** Defendants' motion to dismiss (Doc. No. 3) is **GRANTED WITH PREJUDICE** as to the claims arising from statements made by Defendants Alan Shortall and Eugene Shortall on or before July 15, 2010. The motion is **DENIED** in all other respects.

                                              S/ Yvette Kane
                                              Yvette Kane, Chief Judge
                                              United States District Court
                                              Middle District of Pennsylvania