# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RALPH VARRATO, : | |
|     Plaintiff : | Civil Action No. 1:11-CV-398 |
| : | |
| v. : | (Chief Judge Kane) |
| : | |
| UNILIFE CORPORATION, et al., : | |
|     Defendants : | |

## MEMORANDUM

Plaintiff Ralph Varrato initiated this action by filing a complaint in the Court of Common Pleas for York County, Pennsylvania, on February 3, 2011. (Doc. No. 1-3.) After the matter was removed to this Court, Defendants moved to dismiss the action on March 8, 2011. (Doc. No. 3.) The Court granted in part, and denied in part, Defendants' motion on April 20, 2011. (Doc. No. 9.) Defendants filed an answer and counterclaims against Plaintiff on May 3, 2011. (Doc. No. 10.) Specifically, Defendants bring claims for breach of contract and for misappropriation of trade secrets and confidential business information under Pennsylvania's Uniform Trade Secrets Act. (Id.) Plaintiff filed a motion to dismiss Defendants' counterclaims on June 3, 2011. (Doc. No. 13.) The motion is now ripe for disposition. For the reasons that follow, Plaintiff's motion will be denied.

## I.   BACKGROUND[1]

Plaintiff was employed as facilities manager at Unilife from May 18, 2009, through July

---

[1] In reviewing the motion to dismiss Defendants' counterclaims, the Court will accept Defendants' factual allegations as true and will "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

15, 2010.  (Doc. No. 10 ¶ 2.)[2]  In July of 2010, the parties agreed to end their relationship and entered into a "Confidential Agreement and General Release" on July 15, 2010.  (Id. ¶¶ 6-7.) The agreement included a non-disclosure provision prohibiting Plaintiff from divulging confidential information.  (Doc. No. 10-1 ¶ 6.)  Under the terms of the agreement:

> Confidential Information includes, but is not limited to, manufacturing processes or techniques, information concerning its customers, suppliers, products, operations, safety or industrial hygiene practices, business plans and objectives, management practices, marketing plans, software and computer programs, data processing systems and information contained therein, inventions, product and other designs, technologies, financial statements, policies and any other trade secrets or confidential or proprietary information of or about Unilife that is not already available to the public.

(Id.)  The agreement further requires Plaintiff to return all Unilife property to Unilife.  (Doc. No. 10 ¶ 7.)

Defendants allege that during the final months of his employment, Plaintiff used his Unilife email account to send confidential information, as that term is defined in the agreement and release, to his personal email account.  (Id. ¶ 10-11.)  Defendants further allege that Plaintiff has failed to return said confidential information.  (Id. ¶ 12.)  Accordingly, Defendants claim Plaintiff violated the terms of the agreement by retaining possession of Unilife's confidential information causing damage to Unilife's business interests.  (Id. ¶¶ 25-26.)  Defendants further claim that the confidential information constitutes trade secrets as defined in Pennsylvania's Uniform Trade Secrets Act and that Plaintiff has used that information in competing with Unilife

---

[2] Defendants' answer and counterclaims are separately numbered within the same document.  That is, the answer is comprised of paragraphs one through forty-four, and Defendants' counterclaims are comprised of paragraphs numbered one through forty-five.  For clarity all references to paragraph numbers in document number ten in this memorandum will refer to the numbered paragraphs in Defendants' counterclaims unless otherwise specified.

in violation of the Uniform Trade Secrets Act.  (Id. ¶¶ 34-43.)

## II.     STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  In reviewing a motion to dismiss, a court may "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  Lum, 361 F.3d at 221 n.3.  The motion will only be properly granted when, taking all factual allegations and inferences drawn therefrom as true, the moving party is entitled to judgment as a matter of law.  Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).  The burden is on the moving party to show that no claim has been stated.  Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980).  Thus, the moving party must show that Plaintiff has failed to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist."  Kost, 1 F.3d at 183 (citations omitted).  A court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906, 908 (3d Cir. 1997).  Indeed, the Supreme Court has recently held that while the 12(b)(6) standard does not require "detailed factual allegations," there must be a "'showing,' rather than a blanket assertion of entitlement to relief. . . . '[F]actual allegations must be enough to raise a right to relief above the speculative level.'"  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231-32 (3d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Put otherwise, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1955 (2009)).

**III.   DISCUSSION**

Plaintiff moves to dismiss both counts of Defendants' complaint.  First, regarding Defendants' contract claim, Plaintiff contends that because the emails were sent prior to the execution of the contract and because he has since returned all information requested by Defendants that Defendants are unable to establish a breach of the agreement and release.  (Doc. No. 15 at 13-14.)  Second, regarding Defendants' trade secrets claim, Plaintiff argues that the information identified by Defendants does not fall within the definition of a trade secret under the Trade Secrets Act.  (Id. at 7-13.)  The Court will consider these claims seriatim.

**A.   Breach of Contract**

Plaintiff claims that Defendants have failed to state a claim for breach of contract because Plaintiff did not remove any information after the contract was executed and because he has returned the documents requested by Defendants.  "Under Pennsylvania law, a release is a contract . . . and governed by the rules of contract construction."  G.R. Sponaugle & Sons, Inc. v. Hunt Const. Group, Inc., 366 F. Supp. 2d 236, 242 (M.D.Pa. 2004) (citing Evans v. Marks, 218 A.2d 802 (Pa. 1966); Sparler v. Fireman's Ins. Co., 601, 521 A.2d 433, 434 (Pa. Super. Ct. 1987) (en banc)).  Where the language of the release is "clear and unambiguous," a court reviewing the agreement "looks no further" than the express terms of the release.  Taylor v. Solberg, 778 A.2d 664, 667 (Pa. 2001).  This is true even if the terms of the release are "broad or general, and no matter how 'improvident' the agreement may later prove for one of the parties."  G.R. Sponaugle & Sons, 366 F. Supp. 2d at 242 (citing Taylor, 778 A.2d at 667).

Under the express terms of the agreement, Plaintiff "warrants that he shall not retain possession of any Unilife memoranda, notes, records, reports or other documents (or copies

thereof) relating to Unilife's business and or Unilife Information." (Doc. No. 10-1 ¶ 6(b) (emphasis added).) Because Defendants have alleged facts supporting a finding that Plaintiff failed to return such information after the termination of his agreement (Doc. No. 10 ¶¶ 21-24), they have sufficiently pleaded a breach of the agreement. Although Plaintiff now claims to have deleted such emails, this is a question of fact, which is inappropriate for resolution at the motion to dismiss stage. Accordingly, Plaintiff's motion to dismiss Defendants' contract claim must be denied.

### B.     Uniform Trade Secrets Act

Plaintiff challenges Defendants' counterclaim based on the Uniform Trade Secrets Act on the grounds that Defendants have not sufficiently pleaded that the information in question constituted a trade secret. Plaintiff makes no argument regarding whether the information in question was misappropriated; accordingly, the only question before this Court is whether Defendants have sufficiently pleaded that the information constitutes a trade secret. Defendants allege the misappropriation of the following information:

> designs, concepts, drawings and plans related to the construction of the Unilife facility and its Clean Rooms; executive summaries and monthly status reports by the architects and builders hired by Unilife, which documents are specifically designated as "Confidential"; and, cost summaries, pricing analyses, estimates and other budget reports and budget summaries.

(Doc. No. 10 ¶ 32.)

In determining whether information rises to the level of a trade secret, the Court first looks to the statute. The Uniform Trade Secrets Act defines a trade secret as:

> Information, including a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process that:

> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

12 Penn. Cons. Stat. § 5302.[3]  Factors that may be relevant in determining whether information meets this definition include the:

> [1] extent to which it is known outside the owner's business; [2] extent to which it is known by employees and others within the owner's business; [3] extent of measures taken to guard the secrecy; [4] value of information to competitors; [5] effort or money expended to develop the information; and [6] ease or difficulty with which it could be properly acquired or duplicated.

Parsons, 910 A.2d at 185-86 (citing Iron Age Corp. v. Dvorak, 880 A.2d 657, 663 (Pa. Super. 2005)).  The type of information at issue is not dispositive, rather whether information constitutes a trade secret must be made on a case-by-case basis.  See O.D. Anderson, Inc. v. Cricks, 815 A.2d 1063, 1070-71 (Pa. Super. Ct. 2003).  Further, because these issues raise questions of fact, determining whether information constitutes a trade secret is generally left to the jury.  See, e.g., Bro-Tech Corp., 651 F. Supp. 2d at 410.

The Court is unable to issue a final ruling on the issue of whether the information at issue

---

[3] The Court acknowledges that the Uniform Trade Secrets Act explicitly displaced Pennsylvania's common law tort of misappropriation of trade secrets.  12 Penn. Cons. Stat. § 5308.  However, the statutory definition is substantially similar to the common law definition of trade secret.  Compare Pestco, Inc. v. Associated Prods., 880 A.2d 700, 706 (Pa. Super. Ct. 2005), with 12 Penn. Cons. Stat. § 5302.  Accordingly, in determining whether Defendants have properly pleaded the existence of a trade secret, the Court will follow those courts that have looked to the common law to determine whether information constitutes a trade secret.  See, e.g., Bro-Tech Corp. v. Thermax, Inc., 651 F. Supp. 2d 378, 409 (E.D. Pa. 2009); Youtie v. Macy's Retail Holding, Inc., 653 F. Supp. 2d 612, 620 n.6 (E.D. Pa. 2009); Parsons v. Pa. Higher Educ. Assistance Agency, 910 A.2d 177, 185-86 (Pa. Commw. Ct. 2006).

constitutes a trade secret.  Defendants argue the information reveals confidential information about the design and construction of Unilife's Clean Rooms.  (Doc. No. 10 ¶ 32.)  Defendants further allege that they have limited access to this information.  (Id. ¶ 33.)  Questions related to the extent to which the information was available and the value derived therefrom are inappropriate at the motion to dismiss stage.  Although Defendants' counterclaim could provide more detailed allegations to improve the strength of their claims, the counterclaim sufficiently alleges facts such that Defendants have plausibly stated a claim for a violation of the Uniform Trade Secrets Act.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RALPH VARRATO,** | : | |
|     Plaintiff | : | Civil Action No. 1:11-CV-398 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| **UNILIFE CORPORATION, et al.,** | : | |
|     Defendants | : | |

## **ORDER**

**AND NOW**, on this 17th day of August 2011, **IT IS HEREBY ORDERED THAT**

Plaintiff's motion (Doc. No. 13) to dismiss Defendants' counterclaims is **DENIED**.

                                            S/ Yvette Kane
                                            Yvette Kane, Chief Judge
                                            United States District Court
                                            Middle District of Pennsylvania